(116 App. Div. 801)

## In re WATER SUPPLY IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. January 11, 1907.)

EMINENT DOMAIN—TAKING LAND FOR CITY WATER SUPPLY—CONSTRUCTION OF NEW YORK CHARTER.

　　Charter of New York City (Laws 1901, p. 217, c. 466, § 486) provides that, when the commissioner of water supply shall deem it necessary to acquire real estate for a water supply, he shall prepare a map of the land he purposes to take and submit it to the board of estimate and apportionment, which may adopt, modify, or reject it, and require another to be made instead thereof; that persons interested shall have notice and an opportunity to be heard before a map can be adopted; that a map when so adopted shall be filed in the office of the clerk of the county in which the land is, and a copy of it in the office of the commissioner; and that it shall be the map of the real estate to be acquired "subject to such changes or modifications as the said commissioner may from time to time deem necessary for the more efficient carrying out of the provisions of this act." Section 490 (page 219) provides that the corporation counsel shall, after such filing of the map, apply to the court for appointment of commissioners of appraisal of the land shown on it. Section 494 (page 221) provides that on the filing of the oath of office of such commissioners the city "shall be and become seized in fee of all the parcels of real estate which are shown on the said map." Section 495 (page 221) provides that said commissioners shall procure copies of said map "view the real estate laid down on said map," and make a report of their appraisals. Section 506 (page 227) provides that the court has power "at any time to amend any defects or informalities in any of the special proceedings authorized by this act as may be necessary, or to cause other property to be included therein." *Held*, that the determination of the board of estimate and apportionment as to what lands should be taken could not be overruled by the commissioner of water supply or the court, any changes in the map authorized being only to carry out changes made by such board; so that the commissioners of appraisal must appraise and provide for payment of all land shown on the map adopted by such board, and of which the city became seized on the filing of the oath of office of such commissioners, though while such commissioners were sitting the commissioner of water supply changed the map of lands to be taken so as to take only a part of them.

Appeal from Special Term, Kings County.

Application of the city of New York to acquire certain real estate at Massapequa, in the towns of Kempstead and Oyster Bay, in the county of Nassau, for the purposes of water supply. From the order confirming the report of commissioners of appraisal, certain landowners appeal. Reversed, and report remitted to the commissioners.

Argued before WOODWARD, JENKS, HOOKER, RICH, and GAYNOR, JJ.

Joseph A. Flannery, for appellant William M. Polk.

Augustus N. Hand, for appellants Edward H. Floyd-Jones and others.

Edward H. Wilson, for respondent.

GAYNOR, J. This is a proceeding of the city of New York to acquire real estate on Long Island for water supply in the Borough of Brooklyn pursuant to sections 484 et seq., of the city charter. Laws 1901, p. 215, c. 466. Two property owners appeal from the order of the Special Term confirming the report of the commissioners of ap-

praisal. They say that the report is illegal in that it appraises and provides payment for only part of the lands of the appellants of which they have been divested of title by the proceeding. While the commissioners were sitting the commissioner of water supply changed the map of lands to be taken so as to take only a part of the lands of the appellants shown on the maps on which the proceeding was instituted and which the commissioners were appointed to appraise, and the commissioners of appraisal followed this new map.

The exact point of dispute is this: The commissioner of water supply has to prepare maps of lands he proposes to take and submit them to the board of estimate and apportionment, which may "adopt, modify or reject" them and substitute others instead. It can only adopt maps after giving all persons interested an opportunity to be heard by a prescribed notice. The maps so adopted have to be filed in the office of the clerk of the county in which the land is. The commissioner must also file a copy of them in his office, and then (says the statute) they "shall be the map or maps of the real estate to be acquired, subject to such changes or modifications as the said commissioner may from time to time deem necessary for the more efficient carrying out of the provisions of this act." Section 486. The corporation counsel then applies to court for the appointment of commissioners of appraisal of the lands shown on such map; and on the filing of the oath of office which the said commissioners are required by the statute to take, "the said city of New York shall be and become seized in fee of all those parcels of real estate which are shown on the said map," etc. Sections 490–495. The commissioners have to procure copies of the said maps, "view the real estate laid down on said maps," and hear the owners and other persons interested therein and the city, and make a report of their appraisals (section 495); and application has to be made to court by the corporation counsel on notice for the confirmation of this report.

It is then provided (section 506) that the court has power at any time "to amend any defect or informality in any of the special proceedings authorized by this act as may be necessary, or to cause other property to be included therein," etc.

Taking this latter provision, and the previous one that the maps adopted after a hearing to the property owners by the board of estimate and apportionment, shall be the maps of the real estate to be acquired, "subject to such changes or modifications as the said commissioners may from time to time deem necessary for the more efficient carrying out of the provisions of this act," the learned corporation counsel argues that such adopted maps may be changed by the commissioner of water supply or by the court without authority from the board of estimate and apportionment. I do not see how it can be held that the statute so carefully requires the determination of that board after notice and hearing to all interested only to provide in the next breath that their action could be substantially upset at the mere will of the commissioner or of the court without any hearing at all. On the contrary, the statute creates a system, viz., that the land must be designated by the board of estimate and apportionment after a hearing as a

basis for taking it; and when it provides that the court may add other property, and that the commissioner may change the maps "for the more efficient carrying out of the provisions of this act," it has reference to the carrying out of changes made by the board of estimate and apportionment subsequent to its first adoption of maps. The filing of such maps divests the owners of title and vests it in the city. The system does not contemplate that lands of which the title thus stands transferred shall not be taken, nor that lands the title of which has not thus been transferred shall be taken. In a word, it is for the board of estimate and apportionment to determine what lands shall be taken, and its action cannot be overruled or changed by either the commissioner or the court. It is for it alone to make changes.

The order should be reversed and the report sent back to the commissioners to make their report accordingly.

Order reversed, with $10 costs and disbursements, and matter remitted to the commissioners for further consideration in accordance with the above opinion. All concur.